# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   No. 3:01-0170 |
| | )   JUDGE ECHOLS |
| **VOCATIONAL GUIDES, INC.,** | ) |
| a Tennessee corporation, | ) |
| and **TIMOTHY SCOTT JACKSON,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM

On October 21, 2008, the Court entered an *Ex Parte* Temporary Restraining Order And Order To Show Cause (Docket Entry No. 103) pending a hearing on the Plaintiff's Motion For Order To Show Cause Why Timothy Scott Jackson and Grant Info Systems LLC Should Not be Held in Contempt (Docket Entry No. 92) for violating the Stipulated Final Judgment and Order for Permanent Injunction entered in this case on July 27, 2001. Following entry of the Temporary Restraining Order, the Court held a preliminary injunction hearing on Tuesday, November 4, 2008. The Plaintiff, Federal Trade Commission ("FTC"), appeared at the hearing through its counsel and presented evidence and argument in addition to that already contained in the record.

Based on the evidence presented by the FTC at the hearing, the Court finds that the FTC timely served Timothy Jackson and his brother, Jimmy B. Jackson, who is sole record owner of Grant Info Systems, LLC, with copies of the FTC's pleadings, discovery notices and/or subpoenas, and the Court's Orders entered in relation to the instant matter. The Court's Temporary Restraining Order served on the Jacksons included the date, time and place set for the preliminary injunction

1

hearing, which they failed to attend. Even if service on Timothy Jackson is questionable, the Court finds that Timothy Jackson had actual notice of this proceeding. The evidence presented by the FTC at the hearing showed that Jimmy Jackson shared his copy of the pleadings and Orders with Timothy Jackson during their personal meeting in Nashville on October 28, 2008. (Preliminary Inj. Hr'g Ex. 1, Jimmy Jackson Depo. at 134-136.) Based on Jimmy Jackson's deposition testimony, the Court finds that both Timothy Jackson and Jimmy Jackson, owner of Grant Info Systems, LLC, had actual notice of the pertinent pleadings and Orders, as well as the date, time, and place set for the preliminary injunction hearing. The Court further finds that the failure of Timothy Jackson and Grant Info Systems, LLC, through Jimmy B. Jackson, to appear at the preliminary injunction hearing indicates that they do not oppose the entry of a preliminary injunction against them.

## I. STANDARD OF REVIEW

Title 15 U.S.C. § 53(b) provides that, whenever the FTC has reason to believe that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the FTC, the FTC through its attorneys may bring suit in district court to enjoin such act or practice. "Upon a proper showing that, weighing the equities and considering the [FTC's] likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond[.]" Id.

The statute places a lighter burden on the FTC than that imposed on private litigants by the traditional equity standard because the FTC need not prove irreparable harm to obtain a preliminary injunction. FTC v. Butterworth Health Corp., 121 F.3d 708, 1997 WL 420543 at *1 (6th Cir. July 8, 1997) (unpublished) (citing FTC v. University Health, Inc., 938 F.2d 1206, 1218-1219 (11th Cir. 1991)); FTC v. Affordable Media, 179 F.3d 1228, 1233 (9th Cir. 1999). Under this more lenient

2

standard, the Court must determine the likelihood that the FTC will ultimately succeed on the merits and balance the equities. Id. While it is proper for the Court to consider private hardship in deciding whether to grant an injunction, the Court must afford such concerns little weight, lest the Court undermine the purpose of 15 U.S.C. § 53(b), which is to protect the public at large, rather than individual private competitors. University Health, Inc. 938 F.2d at 1225; FTC v. Verity Int'l Ltd., 124 F.Supp.2d 193, 199 n.38 (S.D.N.Y. 2000).

## II. BACKGROUND

Plaintiff FTC initially commenced this action on February 20, 2001, when it filed its Complaint for Injunctive and Other Equitable Relief (Docket Entry No. 1) pursuant to 15 U.S.C. §§ 45(a) and 53(b). The Complaint alleged that Timothy Jackson and his company, Vocational Guides, Inc. ("VGI"), had engaged in deceptive acts in violation of federal law in connection with the selling of employment goods and services related to the United States Postal Service. The Complaint further alleged that Defendants VGI and Jackson had misrepresented (1) that they were affiliated with the U.S. Postal Service, (2) that postal jobs were available, (3) that consumers who used VGI's materials were likely to score 90 or above on a Postal Service job application test, and (4) that consumers who used VGI's materials were likely to obtain jobs with the Postal Service. VGI closed its operation as a result of the FTC's lawsuit.

The FTC and Defendants Jackson and VGI agreed to a Stipulated Final Judgment and Order for Permanent Injunction, which the Court entered on July 27, 2001. (Docket Entry No. 36.) The Permanent Injunction precluded defendants and persons acting in concert with them from engaging in a prohibited business activity and misrepresenting goods and services; required payment of a monetary judgment of $191,600.00 plus any residue from a receivership estate; and required

3

monitoring of Defendants' compliance. The provisions of the Permanent Injunction were definite and specific. On July 31, 2001, Jackson acknowledged in an affidavit that he had been served with the Permanent Injunction.

Despite the provisions of the Permanent Injunction, Grant Information Service Corporation was incorporated on January 20, 2004, in Tennessee by James O. Jackson, father of Timothy Jackson. On March 29, 2004, Timothy Jackson became the registered agent of the corporation. On July 21, 2004, Grant Information Service Corporation changed its name to GIS, Inc. ("GIS"). Helena Ortegon, Timothy Jackson's former wife, became President and registered agent of the corporation. Through a telemarketing operation, GIS sold customers a package of information about personal grants from the federal government and represented that such grants were available.

The FTC alleged that Timothy Jackson and GIS violated the agreed Permanent Injunction because numerous misrepresentations were made to customers who lost money when they purchased grant information packages that turned out to be useless to them. On November 10, 2005, the FTC filed a motion for order to show cause why GIS, Jackson and Ortegon should not be held in civil contempt for violating the Stipulated Final Judgment and Order for Permanent Injunction. (Docket Entry No. 45.)

On September 12 and 13, 2006, the Court held a contempt hearing at which Jackson and Ortegon appeared through counsel. On November 9, 2006, the Court entered its 45-page Memorandum and Order finding that GIS, Jackson, and Ortegon misrepresented the benefits of the GIS grant information package and holding GIS, Jackson and Ortegon in civil contempt of the Stipulated Final Judgment and Order for Permanent Injunction. (Docket Entry Nos. 84 & 85, Memorandum and Order.) The Court specifically found that the extensive evidence produced at the

4

hearing was clear and convincing that Timothy Jackson controlled GIS, its managers and employees, and Ortegon at all times. The evidence also showed that numerous checks drawn on GIS bank accounts containing funds paid by consumers were cashed by individuals at Jackson's direction and that thousands of dollars in cash were returned to Jackson.

To coerce compliance with the Stipulated Final Judgment and Order for Permanent Injunction and as compensation to consumers for the civil contempt of GIS, Timothy Jackson and Helena Ortegon, the Court ordered Jackson individually to disgorge $371,506.00, and the Court held Jackson jointly and severally liable with GIS for $2,373,351.26 in restitution. The Court also ordered Ortegon individually to disgorge $36,494.00 and held her jointly and severally liable with Jackson and GIS for $1,879,694.20 in restitution. These amounts were to be paid to the U.S. Treasury. The Court's judgment was not appealed. There is no evidence before the Court that any portion of these amounts was paid or collected.

### III. ANALYSIS

The Court has subject matter jurisdiction over this second contempt proceeding under 15 U.S.C. § 53(b). The Court has personal jurisdiction over Timothy Jackson, an admitted citizen and resident of Williamson County, Tennessee, (Preliminary Inj. Hr'g Ex. 5), and Grant Info Systems, LLC, a Tennessee limited liability company. (Id., Ex. 1, Depo. Ex. 2.) Venue is proper in the Middle District of Tennessee pursuant to 28 U.S.C. § 1391(b) and (c).

To grant a preliminary injunction, the Court must first determine whether the FTC has shown a likelihood of success on the merits of its motion for civil contempt brought against Timothy Jackson and Grant Info Systems, LLC. A decision on a motion for contempt lies within the sound discretion of the Court. See Electrical Workers Pension Trust Fund of Local Union #58 v. Gary's

5

Elec. Serv., 340 F.3d 373, 378 (6th Cir. 2003). While the contempt power should not be used lightly, the power "'is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed'" by law. Id. (quoting Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 450 (1911)); Shillitani v. United States, 384 U.S. 364, 370 (1966). Contempt proceedings are used to "enforce the message that court orders and judgments are to be complied with in a prompt manner." Id.

To establish civil contempt, a movant must show by clear and convincing evidence that (1) a party failed to comply with a definite and specific court order, and (2) the party had knowledge of the court order. Gary's Electric Service Co., 340 F. 3d at 379; Rolex Watch USA v. Crowley, 74 F.3d 716, 720 (6th Cir. 1996); N.L.R.B. v. Cincinnati Bronze, Inc., 829 F.2d 585, 591 (6th Cir. 1987). To prevail on a civil contempt claim, the movant is not required to establish intent or willfulness. Rolex Watch USA, 74 F.3d at 720. Once this prima facie showing of a violation is made, the burden then shifts to the alleged contemnor who must "'categorically and in detail' show why he or she is unable to comply with the court's order." Rolex Watch USA, 74 F.3d at 720.

The FTC has shown a strong likelihood that it will succeed on the merits of its pending motion for civil contempt. The FTC has presented evidence showing that Timothy Jackson and Jimmy Jackson acting for Grant Info Systems had knowledge of the Permanent Injunction entered in this case and that they failed to comply with it. In addition, Timothy Jackson had actual knowledge of this Court's prior contempt Order. Both the Permanent Injunction and the Court's prior contempt Order apply to Jimmy Jackson because the evidence shows he has acted in concert with his brother, Timothy Jackson.

6

The FTC has submitted declarations from affected consumers who allege that at various times between June 2005 and October 2007 telemarketers at Grant Info Systems, LLC made misrepresentations to them about the availability of federal government grants available for personal needs, that Grant Info Systems would assist them in applying for such grants, and that a refund of the purchase price would be paid if grants could not be obtained. (Docket Entry No. 93, PX 1-7.) The FTC presented expert evidence that the representations made by telemarketers affiliated with Grant Info Systems concerning the availability of federal government grants to individuals for personal needs were false. (Id., PX 12.)

Further, the FTC provided sworn testimony of former employees of Grant Info Systems. These employees detailed their direct, day-to-day associations with Timothy Jackson and their observations of him as the person in control of Grant Info Systems. These employees described Timothy Jackson's daily management business practices, his control over the telemarketing call center, his hiring of certain assistants, his use of video equipment at a home office to monitor activities at the call center, his use of aliases, including the name of his brother, Jimmy B. Jackson, to hide his involvement in Grant Info Systems, and his direction to certain individuals in his employ to cash checks written on Grant Info Systems bank accounts and return to him thousands of dollars in cash, which he placed in a safe at a rental house he used as offices. (Id., PX 8-11; Preliminary H'rg Tr.) The FTC has also provided evidence that Timothy Jackson handled the advertising for Grant Info Systems, although he used aliases to do so. (Id., PX 8, 13.)

The FTC provided an extensive summary of its investigation into Grant Info Systems and Timothy Jackson. (Id., PX 14; Preliminary Inj. H'rg Tr.) This investigation included obtaining pertinent business and banking records which confirmed the testimony given by former Grant Info

7

Systems employees. The records obtained by the FTC revealed that Grant Info Systems was first incorporated in Tennessee on May 15, 2005 and was then converted to a limited liability company on June 2, 2005. The company began conducting business in Tennessee in May or June 2005. The FTC estimates that Grant Info Systems' total sales revenue for the period June 2005 to October 2007 was at least $5,087,880.00. (PX 14.) Between November 2005 and October 2007, there were 391 checks written for $1,000 or more totaling $1.87 million, all payable to individual Grant Info Systems employees, and an additional 90 checks for $1,000 or more totaling $587,717.00 payable to "Cash" or "Petty Cash." (PX 14.) Suspicious wire transfers were also uncovered. The FTC estimates that Timothy Jackson received at least $2,616,151.00 in cash during the period July 2005 to October 2007. The company stopped conducting business in October 2007, when Grant Info Systems was sold to Troy Allen and his company, Altruis, LLC. Grant Info Systems operated during the same time period when the FTC and the Court were addressing the first motion for contempt brought by the FTC against Timothy Jackson, Ortegon, and GIS.

Finally, the FTC provided the deposition of Jimmy B. Jackson, which was taken in Indiana on October 30, 2008 pursuant to this Court's Order permitting expedited discovery. Like the former employees of Grant Info Systems, Jimmy Jackson testified that Timothy Jackson operated the company, the managers and employees reported to Timothy, and none of the managers or employees reported to Jimmy Jackson, even though he was sole owner. (Jackson Depo. at 44, 64-65.) Jimmy Jackson knew of Timothy Jackson's past problems, but he claimed he thought those problems were over, and he believed the two of them were starting an "above-board" business. He claimed he did not know about the prior Permanent Injunction, however, until shortly before Grant Info Systems was sold to Altruis in October 2007. (Id. at 53-62.)

8

Jimmy Jackson stated he did not own any stock in the business and he did not keep any of the company records or receive any of the corporate bank statements. Rather, the company records were kept at Timothy Jackson's rental house on Newton Nook in Brentwood, Tennessee. (Id. at 45-47, 63, 73, 170-171.) Jimmy Jackson knew his brother's rental house was actually used as company offices (id. at 68), and he visited the house nine or ten times while Grant Info Systems was operating. He knew that Timothy monitored the telemarketing call center through video equipment installed in the rental home. (Id. at 47-53.) Jimmy Jackson was aware his brother moved from the Newton Nook address a couple of months ago, but he claimed he does not know where his brother lives presently. (Id. at 142.)

Jimmy Jackson knew that at least one personal assistant to Timothy put money in bank accounts and withdrew money in cash. (Id. 67.) Jimmy provided Timothy with pre-signed, blank checks on corporate bank accounts and allowed him to use the checks as he saw fit. Jimmy also allowed Timothy to use a signature stamp bearing Jimmy's signature. (Id. at 108-109, 114-115.) Jimmy Jackson was paid $200.00 per week. (Id. at 121.)

Upon receiving service of the FTC's pleadings and the Court's Orders, Jimmy Jackson had several telephone conversations with Timothy Jackson and drove to the Nashville area to meet with his brother on October 28, 2008 in an effort to find a lawyer. (Id. at 130-139, 142-146.) Jimmy showed Timothy the legal documents, and Timothy's response was, "Wow." (Id. at 134.) During their meeting, Timothy provided Jimmy with a rough estimate accounting for the proceeds of the sale of the company to Altruis in October 2007. (Id. at 100-101.) Of the approximate $425,000.00 in sale proceeds received at closing, only $59,000.00 supposedly remains and it is hidden in a safe deposit box at the Jacksons' parents' home in Indiana. (Id. at 71-77, 88 & Depo. Ex. 5.) Jimmy

9

Jackson denied that he handled the wire transfers for the Altruis closing, denied that he used the email address of jimbjack2007@gmail.com to arrange the wire transfers, and denied that he wrote himself two checks for $63,000.00 at closing. (Id. at 80-85, 106.) However, he admitted that he went to various banks at Timothy's direction; he withdrew $42,514.99 at each bank; and he gave all of the money (totaling nearly $260,000.00) to Timothy, who put it in a safe in his rental house. (Id. at 87-90, 93-94.)

Based on all of this evidence, the Court finds that the FTC has shown a strong likelihood that it will prevail on the merits of its motion to hold Timothy Jackson and Grant Info Systems in civil contempt. The fraudulent operation alleged in connection with the instant motion for civil contempt is very similar factually to the operation that was at issue originally in this action and the operation that was at issue in the prior motion for contempt before the Court which resulted in substantial monetary sanctions against Timothy Jackson, GIS and Ortegon. The evidence shows Timothy and Jimmy Jackson had actual knowledge of the prior Permanent Injunction entered July 27, 2001.

The Court has also weighed the equities. Issuance of a preliminary injunction will support the public interest in deterring fraud against consumers. Timothy Jackson and Jimmy Jackson did not appear in this proceeding to allege that any injunction would cause hardship to them, but even if they had done so, the Court finds that the public interest in granting the preliminary injunction outweighs any concern about individual hardship. Based on Timothy Jackson's past history of fraud, his concealment of his role in GIS and now Grant Info Systems, his concealment of assets, and his repeated violation of the initial Permanent Injunction and the prior contempt Order of the Court, there is good cause to believe that he will dissipate assets and destroy property or evidence with respect to Grant Info Systems. Further, there is good cause to believe that Jimmy Jackson,

10

acting as sole owner of Grant Info Systems, will assist his brother, Timothy Jackson, in dissipating assets or destroying property or evidence with respect to Grant Info Systems. Because of these concerns, a preliminary injunction placing an asset freeze, preserving business records, requiring financial disclosures, permitting expedited discovery, and other equitable relief protects the public interest.

## IV. CONCLUSION

For all of the reasons stated, the Court finds that the FTC has shown its entitlement to a preliminary injunction. Therefore, the Court will enter the Preliminary Injunction as proposed by the FTC without requiring the posting of a bond. 15 U.S.C. § 53(b); Fed.R.Civ.P. 65.

An appropriate Order will issue.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE